IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| REBEKAH CURTIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 11-6054-CV-SJ-ODS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER AND OPINION REVERSING AND REMANDING FINAL DECISION

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her disability application. The Commissioner's decision is reversed and remanded.

## I. BACKGROUND

Plaintiff is a 35-year-old female with past relevant work as a cashier and wire harness assembler. The ALJ found Plaintiff suffered from the following severe impairments: propriospinal myoclonus,[1] migrainous vertigo[2] with shortness of breath and fatigue, and depression. The ALJ determined Plaintiff was not disabled after finding she retained the residual functional capacity (RFC) to perform other work existing in the

---

[1] "[P]ropriospinal" means "[r]elating especially or wholly to the spinal cord; specifically, denoting those nerve cells and their fibers that connect the different segments of the spinal cord with each other . . . ." *Stedman's Medical Dictionary*, p. 1576 (28th ed. 2006). "[M]yoclonus" means "[o]ne or a series of shocklike contractions of a group of muscles, of variable regularity, synchrony, and symmetry, generally due to a central nervous system lesion." *Id.* at 1272.

[2] "**Migrainous vertigo**. Migraine is more than a headache disorder. Just as some people experience a visual 'aura' with their migraines, others can get vertigo episodes and have other types of dizziness between migraines." Diseases and Conditions – Dizziness – Causes, HEALTH INFORMATION (July 10, 2010), http://www.mayoclinic.com/health/dizziness/DS00435/DSECTION=causes.

national economy.

## II. DISCUSSION

The Court must affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). Substantial evidence is relevant evidence a reasonable mind would accept as adequate to support a conclusion. *Id.* Evidence that both supports and detracts from the ALJ's decision must be considered. *Id.* If two inconsistent positions can be drawn from the evidence, and one of those positions represents the ALJ's decision, it will be affirmed. *Id.*

Plaintiff makes several arguments for reversal. Beginning with her arguments that lack merit, Plaintiff first challenges the ALJ's credibility determination, expressed by the ALJ in the following manner: "the claimant's statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." Plaintiff argues this reverses how the ALJ should consider a claimant's credibility, and her argument finds some support in 20 C.F.R. § 404.1545(c)(3), which states an ALJ will consider a claimant's own descriptions and observations of limitations in assessing the claimant's RFC (suggesting the consideration should occur *before* the RFC is assessed). Her argument is also directly supported by *Carlson v. Astrue*, 682 F. Supp. 2d 1156, 1167 (D. Or. 2010), which reversed an ALJ's credibility determination for the exact reason advanced by Plaintiff. But the Court finds more persuasive *Hodgson v. Astrue*, No. 3:10–cv–6261–ST, 2011 WL 4852307, at *6, (D. Or. Sept. 14, 2011), which rejected the argument Plaintiff raises.[3] *Hodgson* reasoned:

> The wording is admittedly confusing and not as clear as it should be. Nonetheless, it simply conveys the general concept that the RFC

---

[3] *Hodgson* is a magistrate judge's report and recommendation that was later adopted as the district court's opinion. [Doc. 22 in *Hodgson*]

2

assessment includes those statements by Hodgson concerning her symptoms found credible by the ALJ and excludes her other statements found not credible. This court does not interpret this statement as the ALJ articulating that he is relying upon his own RFC assessment in order to find Hodgson not credible.

For the same reasons, Plaintiff's argument is rejected.

Plaintiff also contends the ALJ erred in finding her daily activities indicative of her ability to work. The ALJ found Plaintiff was "able to engage in a variety of daily activities such as cooking, cleaning, caring for her children and grocery shopping." Plaintiff counters that her limited activities cannot be used to discredit her. Plaintiff is correct that the ALJ cannot use her limited activities as a basis for concluding she can work. *See Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005) ("The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work."); *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) ("This court has repeatedly stated that a person's ability to engage in personal activities such as cooking, cleaning or a hobby does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity" (citation omitted)). But the ALJ did not conclude Plaintiff could work due to her daily activities; the ALJ simply found that "her ability to perform them to any degree suggests that she retains some capacity to perform activities such as sitting, standing, walking and functioning outside her home environment." This finding is reasonable, and nothing suggests the ALJ relied on Plaintiff's daily activities for anything more.

Plaintiff also contends the ALJ erred in finding that "[her] complaints of dizziness not supported by the medical records" because she consistently reported dizziness to her doctors. Pl.'s Brief at 10. But the ALJ did not find Plaintiff's *consistent* reports of dizziness unsupported by the medical evidence; the ALJ found that Plaintiff's allegations of *daily* dizziness unsupported by the medical evidence. This finding is based on substantial evidence in the record as a whole because nowhere did Plaintiff report to her treating doctors that she experienced daily dizziness. Plaintiff notably cites nothing in the record demonstrating otherwise.

3

The Court also rejects Plaintiff's argument the ALJ should have obtained a medical opinion on any limitations caused by her depression. 20 C.F.R. § 404.1519a(b), titled "[s]ituations requiring a consultative examination," states, "A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim." Plaintiff's reports of depression and the medication treatment she received were documented by her doctors, particularly her primary care physician at Weston Family Clinic & Medical Spa. Plaintiff reported no thoughts of self-harm or any other extreme symptoms, nor did she ever seek specialized treatment from a psychologist or psychiatrist. Plaintiff's records support the ALJ's decision that Plaintiff's depression more than minimally affected her ability to work but did not disable her. The ALJ was not required to obtain a consultative examination. *See Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (noting "'ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled'" (citation omitted)).

Also lacking merit is Plaintiff's argument that the ALJ should have included limitations in the RFC determination caused by her propriospinal myoclonus, which occurrs when she sleeps. At the hearing, Plaintiff testified her muscle relaxer prescription "helps" with this condition. An impairment controlled by treatment or medication is not disabling. *Perkins*, 648 F.3d at 901. And Plaintiff never testified to any limitations caused by her propriospinal myoclonus.

Likewise, the Court rejects Plaintiff's arguments that the ALJ erred in not including in the RFC assessment limitations on balancing and avoiding hazards espoused by John Schoenberger, MD, a state agency medical consultant. The ALJ assigned Dr. Schoenberger's opinion only partial weight because the opinion understandably did not take into account evidence occurring after it was rendered. By comparison, the ALJ gave controlling weight to the opinion from treating source Rhea C. Pimentel, MD, of Mid-America Cardiology at the University of Kansas Hospital. Dr. Pimentel's opinion did not include any limitations on balancing or avoiding hazards. The ALJ's decision to give Dr. Schoenberger's opinion less weight was justified by the

4

relevant factors governing how medical opinions should be weighed. *See* 20 C.F.R. § 404.1527(d). The ALJ was not required to include limitations on balancing and avoiding hazards in the RFC assessment.[4]

Plaintiff's last arguments lacking merit also involve Dr. Pimentel's opinion. Plaintiff alleges the vocational expert (VE) "testified . . . when given Dr. Pimentel's entire opinion, that Plaintiff would be precluded from all work." Pl.'s Brief at 10. But that is not true: the VE only testified Plaintiff would be precluded from work when she was provided facts which *supplemented* Dr. Pimentel's opinion.[5] Plaintiff also contends the ALJ erred in failing to include in his RFC formulation limitations caused by her migrainous vertigo impairment. The ALJ's RFC assessment largely reflects Dr. Pimentel's opinion (except as discussed later in this opinion). Plaintiff asserts "Dr. Pimentel's opinion was . . . limited to those impairments for which he [sic] was treating Plaintiff . . . ." Pl.'s Brief at 10, suggesting that reliance on Dr. Pimentel's opinion cannot justify the ALJ's failure to include limitations caused by Plaintiff's migrainous vertigo. Plaintiff is correct Dr. Pimentel did not mention Plaintiff's migrainous vertigo as a cause of any limitations; rather, Dr. Pimentel cited Plaintiff's diagnoses of vasovagal syncope[6] and atrioventricular block[7] (the latter for which Plaintiff required a pacemaker) as the

---

[4] Plaintiff notably does not argue Dr. Pimentel's opinion should not have been given controlling weight.

[5] For example, Dr. Pimentel opined Plaintiff would need to recline 1 hour during the workday. Plaintiff counsel asked the VE if Plaintiff would be able to perform the jobs identified by the VE if Plaintiff's need was "kind of spread out in unpredictable 20 to 40 minute blocks," and the VE answered, "No." Dr. Pimentel never opined Plaintiff's need to recline would be spread out in unpredictable blocks of time.

[6] "[V]asodepressor" (or "vasovagal") syncope is "[f]aintness or loss of consciousness due to reflex reduction in blood pressure." *Stedman's Medical Dictionary*, p. 1887 (28th ed. 2006).

[7] "Atrioventricular (AV) block is partial or complete interruption of impulse transmission from the atria to the ventricles" (emphasis omitted). *Atrioventricular Block*, THE MERCK MANUAL (last full revision January 2008), http://www.merckmanuals.com/professional/cardiovascular_disorders/arrhythmias_and_ conduction_disorders/atrioventricular_block.html.

5

causes for the limitations expressed in her opinion. But Dr. Pimentel was aware of Plaintiff's primary symptoms – lightheadedness, dizziness, shortness of breath, fatigue – because Plaintiff reported them to her, and there is nothing to indicate that Dr. Pimentel's opinion is anything other than her professional judgment of how Plaintiff was physically limited as a whole. And Plaintiff notably does not suggest what – if any – additional limitations caused by her migrainous vertigo should have been included in the ALJ's RFC assessment. The ALJ was not required to include additional limitations in his RFC assessment specifically linked to Plaintiff's migrainous vertigo.

Reversal and remand is required because the ALJ's RFC is based on an unjustified inference regarding Dr. Pimentel's opinion. Dr. Pimentel opined Plaintiff would need to elevate her feet 1 hour during the workday. At the hearing, the VE testified that 1 foot would be the maximum height a worker could elevate their feet and maintain employment. The VE also testified that, if Plaintiff needed to elevate her feet to hip-level, all work would be precluded. Even though neither Dr. Pimentel's opinion or any other evidence states what height Plaintiff would need to elevate her feet, the ALJ found Plaintiff would only need to elevate her feet 1 foot. The Commissioner argues this finding should be upheld in part because "no medical or other evidence suggests that Plaintiff would be required to elevate her feet *more* than one foot." Def.'s Brief at 20. But that is not accurate.

Treatment for a person who faints (i.e., experiences a syncopal episode) requires elevating the person's feet *above their heart*.[8] At the very least, this suggests that Plaintiff's need to elevate her feet requires elevation above her heart, and, unless Plaintiff is lying on the ground during the workday, this would require elevation above 1 foot (precluding all work according to the VE). The only way to know for certain what height Plaintiff needs to elevate her feet is for Dr. Pimentel to be recontacted and asked this question. The ALJ erred in failing to do this before denying benefits. *See* 20 C.F.R. § 404.1512(e) (providing that medical source will be recontacted if source's report

---

[8] National Library of Medicine, *Fainting*, MEDLINE PLUS, (last updated May 29, 2011), http://www.nlm.nih.gov/medlineplus/ency/article/003092.htm.

6

"contains a conflict or ambiguity that must be resolved"). The ALJ is ordered to do so on remand.

If, after being recontacted, Dr. Pimentel reports that elevation above 1 foot is required, then Plaintiff must be found disabled because the ALJ has already assigned Dr. Pimentel's opinion controlling weight. But if Dr. Pimentel states Plaintiff does not need to elevate her feet more than 1 foot, the ALJ should comply with the following additional requirements on remand:

- The ALJ should consider Plaintiff's husband's written statement regarding her limitations, and, if the ALJ discredits it, the ALJ shall do so explicitly. This will remove any question whether the ALJ has complied with his duty to "carefully consider any other information . . . about [Plaintiff's] symptoms." 20 C.F.R. § 404.1529(c)(3).

- Dr. Pimentel rated as "[f]air" Plaintiff's ability to get to work regularly and on time, be supervised, remain in the workplace for a full day, and deal with coworkers and supervisors appropriately, etc. due to stress. While this may not seem very limiting, Dr. Pimentel's opinion states that "[f]air means ability to function in this area is seriously limited but not precluded" (emphasis omitted). In light of this definition, the ALJ should expressly consider these limitations, taking into account that – to be considered not disabled – Plaintiff must be able perform work activities ""'day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world."'" *Boettcher v. Astrue*, 652 F.3d 860, 866 (8th Cir. 2011) (citations omitted).[9]

---

[9] Plaintiff also contends the ALJ was required to include limitations on her social functioning – which he found to be "mild" at step three of the analysis – in the RFC formulation. At least one case has held to the contrary. *See Trudell v. Astrue*, No. 08-353-BW, 2009 WL 1885028, *4 (D. Me. 2009) ("A failure to include mild limitations in social functioning . . . in a claimant's residual functional capacity . . . is not error . . . ." (citation omitted)). The Court found only very little evidence outside Dr. Pimentel's opinion that would justify any limitations in this area. The Court believes that – in explicitly addressing Plaintiff's seriously limited abilities regarding people in the workplace – the ALJ will account for any limitations in Plaintiff's social functioning.

7

III. CONCLUSION

The Commissioner's final decision is reversed and remanded. On remand, the ALJ shall recontact Dr. Pimentel to determine how high Plaintiff must elevate her feet during the workday. If Dr. Pimentel opines Plaintiff must elevate her feet more than 1 foot, Plaintiff must be found disabled. If Dr. Pimentel does not, the ALJ should go on to explicitly consider Plaintiff's husband's statement and Dr. Pimentel's opinion that Plaintiff was Plaintiff's ability to get to work regularly and on time, etc., was "[f]air," giving express consideration to the principle that – to be found not disabled – Plaintiff must be able perform work activities day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.
IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: February 6, 2012                    UNITED STATES DISTRICT COURT